## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | In Proceedings |
| | ) | Under Chapter 7 |
| LAKELAND RADIOLOGISTS, LTD., | ) | |
| | ) | |
| Debtor. | ) | Bk. No. 15-60229 |
| | ) | |
| ROBERT T. BRUEGGE, Trustee of the | ) | |
| Estate of Lakeland Radiologists, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-6009 |
| | ) | |
| OMER M. AKER, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

Plaintiff, Robert T. Bruegge, Trustee for the Estate of Debtor Lakeland Radiology, Ltd, seeks to avoid two preferential transfers and a fraudulent conveyance from the Debtor to Defendant Dr. Omer M. Aker ("Defendant") pursuant to 11 U.S.C. §§ 542, 547, 548 and 502. The complaint also seeks to recover the avoided transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550. The complaint seeks a total of $224,248.82 for all of the avoided transfers to the Defendant plus interests and costs.

The relevant facts are as follows. Debtor originally commenced its Chapter 11 bankruptcy on April 24, 2015 in the United States Bankruptcy Court for the Central District of Illinois. The case was transferred to the Southern District of Illinois on May 28, 2015 where it was subsequently converted to a proceeding under Chapter 7 on July 16, 2015.

Defendant is a radiologist who is a former employee and shareholder of the Debtor. Defendant began working for the Debtor in 2003. He became a shareholder in 2005 and remained a shareholder until April 2012, at which time he sold his shares in the Debtor to Dr. Aldo C. Ruffolo ("Ruffolo"), the Debtor's former CEO. The issues raised in this proceeding involve the details of a two-part agreement ("Agreement") that the Defendant entered into regarding the sale of his shares and his continued employment with the Debtor.

According to the testimony presented at trial, prior to January 2012, the Defendant was being solicited by other parties for employment and had received offers to sell his shares in the Debtor for $2,000,000 and $600,000. The Defendant did not accept these offers but, instead, entered into discussions with Ruffolo and the Debtor regarding his employment and shareholder status. These negotiations ultimately resulted in the above-referenced Agreement. The first part of the Agreement was an employment contract ("Employment Contract") between the Defendant and the Debtor. Pursuant to the terms of the Employment Contract, the Defendant agreed to work for the Debtor for an annual salary of $550,000 per year, payable in bi-weekly installments (Doc. 42-10, p. 3, ¶ 4.1). This salary was guaranteed for the first three years of the five-year agreement. Thereafter, the Defendant's salary was subject to adjustment by the Debtor's Board of Directors (Doc. 42-10, p. 3, ¶ 4.1).

The second part of the agreement was a stock purchase agreement ("Stock Purchase Agreement") between the Defendant and Ruffolo individually, whereby Ruffolo agreed to purchase all of the Defendant's shares in the Debtor for $600,000 (Doc. 42-10, pp. 16-18). The Stock Purchase Agreement required Ruffolo to pay the Defendant $200,000 within 120 days of the closing date of the agreement. The remaining balance of $400,000 was to be paid in four (4) equal annual installments of $100,000 each (Doc. 42-10, p. 15).

On April 30, 2012. Ruffolo transferred the initial $200,000 payment into the Defendant's Wells Fargo account (Doc. 42-5; Stipulation Doc. 48, p. 25). It was subsequently discovered that on April 29, 2012, the Debtor wrote a check payable to Ruffolo in the amount of $200,000. The memo line on the check referenced a "loan advance" but offered no further explanation (Stipulation, Doc. 48, p. 19). Ruffolo's bank records indicate that two (2) $200,000 deposits were made into his First Neighbor Bank checking account on April 30, 2012 (Stipulation, Doc. 48, p. 22). These records further evidence that the $200,00 withdrawals were made from this account on April 30, 2012 and May 1, 2012 respectively (Docs. 42-8; 42-9; 48).

Neither Ruffolo nor the Debtor complied with their obligations under the Agreement. Ruffolo made no further payments under the Stock Purchase Agreement. Similarly, the Debtor failed to timely pay the Defendant's salary under the Employment Contract resulting in a $216,849.00 claim for unpaid wages (*See* BK 15-60229, Claim 30-1). The Debtor testified that he received no salary payments after 2014 except one payment in the amount of $12,124.41 in February 2015 and another payment in that same amount in March 2015 (collectively "salary payments").[1]

The Debtor subsequently filed its bankruptcy petition on April 24, 2015. On April 24, 2017, the Trustee filed the instant five-count complaint against the Defendant. In Count I, the Trustee seeks to avoid the salary payments as preferential transfers pursuant to 11 U.S.C. § 547(b). In Count II, the Trustee seeks to avoid the $200,000 stock payment ("stock payment") to the Defendant as a fraudulent transfer pursuant to 11 U.S.C. § 548(b). Alternatively, the Trustee requests in Count III that if the Court determines that the stock payment is not avoidable under § 548, that the transfer be avoided pursuant to 11 U.S.C. § 544 and §160/5 of the Illinois Uniform

---

[1] The Defendant received one salary payment in the amount of $12,124.1 on February 6, 2015 and another in that same amount on March 10, 2015.

Fraudulent Transfer Act. In Count IV, the Trustee seeks to recover the avoided transfers for the benefit of the estate pursuant to 11 U.S.C. § 550(a) and, finally, in Count V, the Trustee requests that the Court disallow any claims by the Defendant against the Debtor until any amounts owed by the Defendant to the estate are satisfied pursuant to 11 U.S.C. §§ 502(d) and (j).

On July 19, 2017, the Defendant filed an answer in which he denied the pertinent allegations of the complaint.[2] The Defendant also raised certain affirmative defenses including that the transfers were made in the ordinary course of business; that the transfers constituted contemporaneous exchanges for new value given; and that after the transfers, the Defendant gave new value to or for the benefit of the Debtor.[3]

The Court conducted a trial on the complaint on May 20, 2019. At that time, Defendant's then-counsel stipulated on the record that the salary payments constituted preferential transfers pursuant to § 547(b) and, further, that the stock payment constituted a fraudulent transfer pursuant to § 548. After hearing the testimony of the Defendant, the Court ordered the parties to submit post-trial briefs addressing the merit of the Defendant's alleged defenses under § 547(c). The Court also requested that the briefs address the applicability of 11 U.S.C. § 550(a). Specifically, the Court asked the parties address the issue of whether the Defendant was the initial transferee of the stock transfer for purposes of § 550(a). It then rescheduled the matter for further hearing on July 22, 2019.

The hearing on this matter was rescheduled multiple times at the behest of the parties due to on-going issues with Defendant's then counsel, including his suspension from the practice of law by the Illinois Attorney Registration and Disciplinary Commission. The Defendant

---

[2] The Defendant also filed a Motion to Dismiss Counts II and II of the Complaint on July 19, 2017. However, that motion was later voluntarily dismissed.

[3] The Defendant did not reference the sections of the Bankruptcy Code under which he was proceeding. However, the Court presumes that these affirmative defenses are raised pursuant to 11 U.S.C. §§ 547(c)(1), (2) and (4)

subsequently retained new counsel and, at the direction of the Court, the parties submitted new post-trial briefs in February 2020 and the matter was taken under advisement. The Court will first address whether the salary payments from the Debtor to the Defendant constitute an avoidable preference pursuant to 11 U.S.C. § 547 (Count I). It will then examine whether the stock payment is avoidable as a fraudulent transfer under 11 U.S.C. § 548 (Count II) or alternatively 11 U.S.C. § 544 and §160/5 of the Illinois Uniform Fraudulent Transfer Act (Count III). Finally, the Court will address whether the payments, if avoidable, may be recovered by the Trustee (Count IV) and if Defendant's claims are disallowed until the avoidable transfers are recovered (Count V).

Count I seeks the avoidance of two salary payments totaling $24,248.82 under 11 U.S.C. § 547. The two payments were paid from the Debtor to the Defendant under the employment agreement. The Defendant received the first payment in the amount of $12,124.41 from the Debtor in February 2015 and a second payment in the same amount in March 2015. The Debtor then filed bankruptcy in April 2015.

A Trustee is given the power to avoid a preferential transfer of a debtor's interest in property under 11 U.S.C. § 547(b) which states:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

 11 U.S.C. 547(b). At the May 20, 2019 hearing it was stipulated that the salary payments constituted preferential transfers pursuant to § 547(b) and the Court is only tasked with determining if any of the Defendant's potential defenses were available to him.

The Defendant asserts that he is entitled to a defense under § 547(c) because he gave new value for the benefit of the Debtor. Section 547(c)(4) of the Bankruptcy Code states:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4). No security interest is present for the preferential transfers so the Court shall only focus on § 547(c)(4)(B).

For the purposes of section 547(b) new value is defined under the Code as "money or money's worth in goods, services, or new credit… but does not include an obligation substituted

6

for an existing obligation." 11 U.S.C. § 547(a)(2). The Seventh Circuit has stated that when determining if the new value defenses applies it must be found that the creditor extended new value, that the new value is unsecured, and the new value remains unpaid. *McKloskey v. Schabel* (*In re Schabel*), 338 B.R. 376, 381 (Bankr. E.D. Wis. 2005) (*citing Matter of Prescott*, 805 F. 2d 719, 728 (7th Cir. 1986)).

Defendant maintains the new value he extended to Debtor was his continuing employment. The employment agreement purported to pay Defendant $550,000 for the first three years and this amount could be changed by a vote by the Board of Directors the last two years. Defendant worked under this agreement up to Debtor's bankruptcy and he received two payments totaling $24,248.82 within the 90 days before filing. Defendant did keep working after the payments were made but that does not equal new value under § 547(c)(4).

The preferential transfers made by Debtor were to make up for salary payments it already owed to Defendant. The payments were not given to Defendant so that he would start working for Debtor after they were made. Courts have found that a preference made for a labor contract can invoke the defense under § 547(c)(4) but only when they begin work after the preference. *Stahl v. Whelan Elec., Inc. (In re Modtech Holdings, Inc.)*, 503 B.R 737 (Bankr. C.D. Cal. 2013) (subcontractor was able to invoke the ordinary course of business and new value defenses for a preferential transfer from Debtor). Defendant's continued labor was not new value because he had been providing the labor for the entire duration of the employment agreement and did not begin providing the labor due to the two payments.

Since Defendant did not provide new value under § 547(c)(4) this Court does not have to determine whether the value was unsecured and unpaid. Defendant is not entitled to a defense

under § 547(c)(4) and, since no other defenses were brought by Defendant, the Court finds that

the two payments totaling $24,248.82 are preferential transfers subject to avoidance by Plaintiff.

The Court will next determine whether the stock payment is avoidable as a fraudulent

transfer pursuant to 11 U.S.C. § 548 (Count II) or, alternatively, under Section 5 of the Illinois

Uniform Fraudulent Transfer Act, 740 ILCS 160/1, *et. seq.*, made applicable to these

proceedings pursuant to 11 U.S.C. § 544 (Count III). At the hearing on May 20, 2019,

Defendant's then counsel admitted that the stock payment constituted a fraudulent transfer

pursuant to § 548 rendering a discussion of avoidability under Counts II and III unnecessary. The

Court will now move on to the second part of the inquiry to determine whether the preferential

transfers and the fraudulent transfer are recoverable by the Trustee for the benefit of the estate

pursuant to 11 U.S.C. § 550.

Count IV is brought under § 550 of the Bankruptcy Code which allows for the Trustee to

recover avoided transfers from "the initial transferee of such transfer" or "any immediate or

mediate transferee of such initial transferee." 11 U.S.C. § 550 (a)(1) & (2). Sections 550(a)(2)

through § 550(b) limit from whom the trustee may recover. Specifically, § 550(b) provides:

 **(b)** The trustee may not recover under section 550 (a)(2) of this section from—

   **(1)** a transferee that takes for value, including satisfaction or securing
       of a present or antecedent debt, in good faith, and without
       knowledge of the voidability of the transfer avoided; or

   **(2)** any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550 (b)(1) & (2). This allows an immediate or mediate transferee to put forth a good

faith defense to the trustee's claim. Count IV seeks recovery of both the fraudulent transfer and

the preferential transfers and This Court will determine if Defendant has any defenses to the

recovery.

Plaintiff alleges that Defendant is either an initial transferee or immediate transferee under § 550(a)(1) & (2). As pointed out in the Plaintiff's post-trial brief, there is a critical distinction between subsection (1) and (2) of § 550(a). This distinction grants the Trustee an absolute recovery from an initial transferee, whereas an immediate or mediate transferee is entitled to a good faith defense. *Schafer v. Las Vegas Hilton Corp.* (*In re Video Depot),* 127 F. 3d 1195, 1197-1198 (9th Cir. 1997). Initial transfers are not entitled to the good faith defense because they are in the best position to monitor the transactions unlike their subsequent transferee counterparts. *Id*. Plaintiff alleges that Defendant is the initial transferee from Debtor for both the preferential transfers and fraudulent transfer.

The Seventh Circuit Court of Appeals provided some guidance to what is considered an initial transferee under § 550(a)(1). The Court determined that even though the Code does not define what an initial transferee is and there is no legislative history on point, the minimum requirement for the status "is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin. Servs. v. European Am. Bank*, 838 F. 2d 890, 893 (7th Cir. 1988). The 9th Circuit Court of Appeals explained the initial transferee is "one with the right to put the money to one's own purposes." *Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc.* (*In Re WallDesign Inc.)*, 872 F. 3d 954, 962 (9th Cir. 2017) (citing *Bonded Fin. Servs.*, 838 F.2d 893). The Court determined the keys to the test are "whether the recipient of funds has legal title to them and whether the recipient has the ability to use [the funds] as he sees fit." *Id.* at 963.

Under the employment agreement the Defendant received two payments of $12,124.41 from the Debtor in February and March of 2015. The two payments went directly from the Debtor to the Defendant and did not first go to Dr. Ruffolo or another third party. This gave

Defendant the dominion and control over the $24,248.82 and makes Defendant the initial transferee from the Debtor. Therefore, the Plaintiff is allowed to recover the $24,248.82 in preferential transfers from the Defendant.

The Court will now shift its focus to determine the recoverability of the fraudulent transfer. Plaintiff alleges that Defendant was the initial transferee of Debtor for the stock payment even though the $200,000 was first transferred to Dr. Ruffolo. Defendant counters by stating that Dr. Ruffolo was the initial transferee who had complete control over the funds. Plaintiff states that Dr. Ruffolo did not have dominion and control over the $200,000 due to how quickly it was moved from his account.

The Court finds Plaintiff's assertions unpersuasive. Dr. Ruffolo was given legal title to the $200,000 once the check was put into his account and had no restrictions on how to use them. The check was put into Dr. Ruffolo's personal account for his use without any true guidance from Debtor. Plaintiff refers to the "loan advance" language as being explicit instructions but that is simply not the case. The writing of "loan advance" did not direct Dr. Ruffolo to pay the $200,000 to Defendant or even specify that it was for Defendant.

The Court finds that Defendant was not the initial transferee from Debtor for the fraudulent transfer. Instead it finds that Dr. Ruffolo was the initial transferee who had dominion over the $200,000 with no directions to provide it to Defendant.

Under the Code the Trustee may recover from an immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a)(2). However, the Code does make an exception for an immediate or mediate transferee that takes "for value, including satisfaction of a present or antecedent debt, in good faith, and without knowledge of the voidability of the avoided transfer."

10

11 U.S.C. § 550(b)(1) & (2). Accordingly, the Court must determine whether the Defendant has satisfied the necessary requirements to assert this defense.

Starting with the "for value" element, the Seventh Circuit has determined that a partial satisfaction of an antecedent debt is sufficient for the purposes of meeting the element. *Desmond v. Am. Express Centurion Bank, Inc. (In re Callas)*, 557 B.R. 647, 655 (Bankr. N.D. Ill. 2016). Defendant maintains that he provided value through his employment and the $600,000 he was to be paid under the Stock Purchase Agreement. Conversely, Plaintiff asserts that Defendant did not receive adequate value for his shares because they were valued at $600,000 and he only received $200,000 for them. The Court finds this argument unpersuasive since the Seventh Circuit has explained that the focus is on what the transferee gave up, not what was received. *Id* at 654. Defendant received $200,000 from Dr. Ruffolo for his shares. Defendant gave up his ownership interest in Debtor for the $200,000 and that is enough to satisfy the "for value" element.

The "good faith" and "without knowledge" elements are frequently collapsed together during analysis because they focus on what the transferee knew about the transfer. *Id* at 655. The legislative history of § 550(b)(1) explains that "'good faith' is intended 'to prevent a transferee from whom the trustee could recover from transfer[r]ing the recoverable property to an innocent transferee, and receiving a [re]transfer from him.'" *Id* (quoting *Equip. Acquisitions Res.,* 803 F. 3d at 842). A lack of good faith has been found "when the circumstances establish that a transferee knew or should have known of a debtor's poor financial condition." *Id* (citing *Joy Recovery*, 286 B.R. at 80). A transferee has been found to have knowledge of the avoidability even when they do not have a "complete understanding of the facts and receipt of lawyer's opinion that…a transfer is voidable." *Id* at 656 (Citing *Bonded Fin. Servs.*, 838 F. 2d at 898).

Defendant states he was a good faith transferee because he only knew the $200,000 was coming from Dr. Ruffolo and had no reason to know the payment was coming from anyone else. Plaintiff alleges that Defendant is not entitled to the "good faith" defense due to the Defendant's knowledge of the Debtor's financial status at the time of the transfer. Plaintiff focuses on the Defendant's testimony of his knowledge of the excessive gifts given by Debtor to its employees.

Based on the facts this Court is inclined to side with Defendant. There was insufficient evidence provided to show that Defendant should have inquired about the source of the payment. Even though Defendant had knowledge of prior extravagant bonuses being given out to employees, the purchase of his shares does not seem to be in the same category as the extravagant bonuses. Defendant knew from the stock purchase agreement that he was to receive the $200,000 from Dr. Ruffolo and not Debtor. Defendant did have to inquire of Dr. Ruffolo for the payment, but there was nothing to show that the Defendant's waiting for payment was indicative of the Debtor's poor financial condition. Defendant even testified that he believed the Debtor's financial condition was good due to the buyout offers that Debtor was receiving at the time.

This Court finds that Defendant is entitled to employ the "good faith" defense with regard to the fraudulent transfer. Defendant took for value in good faith and without knowledge of the avoidability of the transfer. Therefore, Plaintiff may not recover the $200,000 fraudulent transfer from Defendant.

Finally, in Count V of the complaint, the Plaintiff seeks the disallowance and reconsideration of the Defendant's claims against the Debtor pursuant to 11 U.S.C. §§ 502(d) and (j). These sections provide, in pertinent part:

> **(d)** Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section

. . . 550 . . . of this title or that is a transferee of a transfer avoidable under section
. . . 544, . . 547 [or] 548. . .of this title, unless such entity or transferee has paid the
amount, or turned over any such property, for which such entity or transferee is
liable under section. . . 550. . .of this title.

* * *

 **(j)** A claim that has been allowed or disallowed may be reconsidered for cause. A
reconsidered claim may be allowed or disallowed according to the equities of the
case. Reconsideration of a claim under this subsection does not affect the validity
of any payment or transfer from the estate made to a holder of an allowed claim
on account of such allowed claim that is not reconsidered, but if a reconsidered
claim is allowed and is of the same class as such holder's claim, such holder may
not receive any additional payment or transfer from the estate on account of such
holder's allowed claim until the holder of such reconsidered and allowed claim
receives payment on account of such claim proportionate in value to that already
received by such other holder. This subsection does not alter or modify the
trustee's right to recover from a creditor any excess payment or transfer made to
such creditor.

11 U.S.C § 502(d), (j).

Pursuant to these sections, the claims of any entity that owes the estate must be

disallowed until Defendant pays the aggregate amount of all avoided transfers to the Plaintiff.

Plaintiff alleges that since Defendant is a transferee who has not paid the aggregate amount of all

avoided transfers, his claims must be disallowed. Plaintiff asserts that the total of all avoided

transfers in this case total $224,248.82. However, the Court disagrees with this amount. Based on

the Court's determinations in the previous sections, the total amount of avoided transfers subject

to recovery is $24,248.82, which represents only the preferential salary transfers. Accordingly,

the Court agrees that Defendant's claims must be disallowed but the amount to be repaid is

$24,248.82 plus interests and costs.

Plaintiff seeks for the reconsideration and disallowance of Defendant's claims until the

aggregate amount of all the All Avoided Transfers are paid. Using the same determination as the

paragraph above, the Court agrees with the Plaintiff's request for disallowance of the

Defendant's claim until the $24,248.82 plus interests and costs are repaid by Defendant.

13

For the forgoing reasons, this Court finds that the preferential transfers of $24,248.82 and that the fraudulent transfer of $200,000 are avoidable, but the Plaintiff may only recover the preferential transfers totaling $24.248.82 plus interest and costs from the Defendant. The Court also finds that Defendant's claims against the Debtor are disallowed until the $24,248.82 plus interests and costs is paid in full.

See Order entered this date.

ENTERED: July 14, 2020

/s/ William V. Altenberger

UNITED STATES BANKRUPTCY JUDGE